1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9    Pedro Isaac Martinez,                    No. CV-13-01132-PHX-SRB (BSB)
                                                   CR-11-00248-PHX-SRB
10                        Movant/Defendant,
                                               **REPORT AND**
11   v.                                        **RECOMMENDATION**

12   United States of America,

13                         Respondent/Plaintiff.

14

15          Movant/Defendant Pedro Isaac Martinez (Defendant) has filed a Motion to

16   Vacate, Set Aside, or Correct Sentence by a person in Federal Custody pursuant to 28

17   U.S.C. § 2255 challenging his sentences in CR-11-248-PHX-SRB.   (Doc. 1.)[1]   The

18   United States, Respondent/Plaintiff, (the government) has filed a response asserting that

19   the motion should be denied, and Defendant has filed a reply.  (Docs. 6, 9.)  For the

20   reasons set forth below, the Court recommends that Defendant's § 2255 motion be

21   denied.

22   **I.      Procedural History**

23          In December 2011, pursuant to a plea agreement, Defendant pleaded guilty to one

24   count of Attempted Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a) and (d)

25   (Count 1 of the second superseding indictment), four counts of Armed Bank Robbery, in

26   violation of 18 U.S.C. § 2113(a) and (c) (Counts 3, 7, 9, and 11 of the second superseding

27

28          [1]   Citations to "Doc." are to the docket in CV-13-1132-PHX-SRB (BSB).
     Citations to "CR Doc." are to the docket in the underlying criminal case, CR-11-248-
     SRB.  _

1   indictment), one count of Interference with Commerce by Violence, in violation of
2   18 U.S.C. § 1951 (Count 1 of the indictment in the District of Nevada case CR-11-394-
3   KJD-CWH, transferred to the District of Arizona as CR-11-2367-PHX-SRB (the Nevada
4   case)), and Use of a Firearm during a Crime of Violence, in violation of 18
5   U.S.C. § 924(c)(1)(A)(i, ii, iii) (Count 6 of the second superseding indictment).  (CR
6   Doc. 75.)  In exchange for Defendant's plea, the government dismissed counts 2, 4, 5, 8,
7   10, and 12 of the second superseding indictment.[2]  (CR Doc. 75 at 3; CR Doc. 74 at 1.)

8       On June 4, 2012, the Court sentenced Defendant to a 300-month term of
9   imprisonment followed by five years of supervised release.  (Doc. 74.)  Specifically, the
10  Court sentenced Defendant to 180 months' imprisonment on Counts 1, 3, 7, 9, and 11 in
11  the second superseding indictment (CR Doc. 74 at 1), and on Count 1 of the Nevada
12  case,[3] and to 120 months' imprisonment on Count 6 in the second superseding
13  indictment.  (*Id.* at 1.)  The Court ordered that the sentences on Counts 1, 3, 7, 9, 11 and
14  Count 1 of the Nevada case run concurrently with each other, and that the sentence on
15  Count 6 run consecutively to the sentences imposed on Counts 1, 3, 7, 9, and 11 and in
16  Count 1 of the Nevada case.  (*Id.*)

17  **II.    Claims Raised in § 2255 Motion**

18      In the pending motion, Defendant asserts four grounds for relief.  In Ground One,
19  he alleges that he was subjected to double jeopardy and double counting by the
20  sentencing court's reliance upon an erroneous calculation of the sentencing range under
21  the United States Sentencing Guidelines (the Guidelines or U.S.S.G.).  (Doc. 1 at 4.)  In
22  Ground Two, he alleges that trial counsel rendered ineffective assistance by failing to

23  _____

24      [2]  Counts 2, 4, 8, and 10 of the second superseding indictment charged Petitioner
25  with use of a firearm during a crime of violence, in violation of 18
    U.S.C. § 924(c)(1)(A)(I, ii), in relation to the charges of attempted armed robbery in
26  Count 1 (attempted armed robbery on Sept. 25, 2010), and armed robbery in Count 3
    (armed robbery on Sept. 30, 2010), Count 7 (armed robbery on Nov. 1, 2010), and Count
27  9 (armed robbery on Nov. 5, 2010).  (CR Doc. 23.)  Count 5 of the second superseding
    indictment charged Defendant with armed robbery on October 26, 2010.  (*Id.*)

28      [3]  The judgment in the Nevada case, transferred to Arizona as CR 11-2367-PHX-
    SRB, is located at Doc. 32 in that case.

1   object to the erroneous sentencing guideline range and by failing to provide Defendant

2   with a copy of the pre-sentence investigation report (PSR).[4]   (*Id.*)   In Ground Three,

3   Defendant alleges that the Probation Office violated his right to due process by not

4   providing him with a copy of the PSR so that he could defend against mistakes in the

5   PSR.  (*Id.*)  In Ground Four, Defendant alleges that the waiver of his right to collaterally

6   attack his sentence contained in his plea agreement is "moot" because fundamental error

7   occurred at the sentencing phase.  (*Id.* at 5.)  In his Reply, Defendant states that if the

8   Court determines that Ground One lacks merit, his claim in Ground Four is moot.

9   (Doc. 9 at 13.)

10   **III.    Petitioner's Claims**

11            **A.    Ground One — Double Jeopardy and Double Counting**

12            In Ground One, Defendant asserts that his sentences violate the Double

13   Jeopardy Clause because he received multiple punishments for the same offense.  (Doc. 1

14   at 4.)  Defendant also argues that his sentences were enhanced twice, once for using a

15   firearm during the commission of a crime of violence, under 18 U.S.C. § 924(c), and for

16   a specific offense characteristic, under U.S.S.G. § 2B3.1(b)(2)(C), resulting in "double

17   counting" in violation of Amendment 599 to the Guidelines.  (Doc. 1 at 9-13; PSR ¶¶ 29,

18   36, 44, 51, 58, 65.)  The government asserts that Defendant's sentences were correctly

19   calculated and do not violate the Double Jeopardy Clause or Amendment 599.[5]

20

21   _____

22   [4]   Pursuant to LRCrim 32.1(d)(3), the PSR is not filed in docket of either the
     criminal or civil case, but is retained after sentencing by the United States Probation
23   Office.  The Court reviewed a copy of the PSR that it obtained from the Probation Office.

24   [5]   In its Response, the government states that Defendant "argues that Amendment
     599 of the Guidelines should have been retroactively applied to his offense level."
25   (Doc. 6 at 3.)   Defendant argues the government's use of the word retroactively is a
     mischaracterization of his argument because Amendment 599 was "in place" before his
26   sentencing. (Doc. 9 at 7.)  Defendant was charged on June 28, 2011 and was sentenced
     on June 4, 2012.  Amendment 599 was effective in November 1, 2000.  *See United States
27   v. Malone*, 2009 WL 113741, at *1 (D. Or. Jan. 16, 2009) (discussing Amendment 599).
     Thus, it appears that the government's suggestion that Amendment 599 would apply
28   retroactively in this particular case is inaccurate.   However, the inaccuracy is
     inconsequential because the government agrees that Amendment 599 applies, but argues
     that Defendants sentences do not run afoul of that amendment.

1   Defendant pleaded guilty and was sentenced for the following counts of the

2   second superseding indictment: Count 1, Attempted Armed Bank Robbery; Counts 3, 7,

3   9, 11, Armed Bank Robbery; and Count 6, Use of a Firearm During a Crime of Violence.

4   (CR Doc. 75.)  The count of attempted armed bank robbery (Count 1), and each count of

5   armed bank robbery (Counts 3, 7, 9 and 11), were alleged to have taken place on different

6   dates and at different locations.  (CR Doc. 23 at 1-5.)  Similarly, in the factual basis

7   section of Defendant's plea agreement, he admitted that the conduct underlying each

8   count occurred on different dates and at different locations.  (CR Doc. 75 at 7-10.)  In the

9   same plea agreement, Defendant pleaded guilty to Count 1 in the Nevada case,

10   Interference with Commerce by Violence.  (CR Doc. 75 at 1.)

11   At sentencing, the parties agreed that Defendant's sentencing range was properly

12   calculated in the PSR.  (CR Doc. 78 at 3-4.)  For Counts 1, 3, 7, 9, 11 of the second

13   superseding indictment Defendant received a five-level enhancement to his offense level

14   calculation for brandishing a firearm during the offense.  See U.S.S.G. § 2B3.1(b)(2)(A),

15   (C); (PSR ¶¶ 29, 36, 44, 51, 58.)  For Count 1 from the Nevada case, Defendant received

16   a seven-level enhancement to his offense level calculation because he discharged a

17   firearm during that offense.  *See* U.S.S.G. § 2B3.1(b)(2)(A), (C); (PSR ¶ 65.)  For those

18   six counts, Defendant's combined, adjusted offense level was 34.  (PSR ¶ 69.)  After a

19   three-level reduction for acceptance of responsibility, Defendant's total offense level was

20   31.  (PSR ¶¶ 70-71.)

21   Defendant's sentence for Count 6, Use of a Firearm during a Crime of Violence —

22   120 months consecutive to the sentences imposed on all other counts — did not require

23   an offense level computation under the Guidelines because that sentence was "required

24   by statute."  (*See* PSR ¶¶ 9, 26); *see also* U.S.S.G. § 2K2.4(b); 18 U.S.C. § 924(c)(iii).[6]

---

26   [6]   Count 6 of the second superseding indictment charged Defendant with
possessing, using, carrying, brandishing, and discharging a firearm during a crime of

27   violence on October 26, 2010 in violation of 18 U.S.C. § 924(c)(1)(A)(i, ii, iii).  (CR
Doc. 23 at 3.)  In the plea agreement, Defendant admitted that, on October 26, 2010, he

28   entered a bank, demanded money from a bank teller, pointed a handgun at a bank
customer's head, then "fired one round . . . ."  (CR Doc. 75 at 8.)  Section
924(c)(1)(A)(iii) provides that "if the firearm is discharged" "during and in relation to

Defendant argues that because Count 5, the armed bank robbery underlying the firearm charge in Count 6, was dismissed pursuant to the plea agreement he should not have received weapon enhancements on Counts 1, 3, 7, 9, 11, and Count 1 in the Nevada case, because those counts "were combined and treated as the underlying offense and sentences for count 6."  (Doc. 1 at 4.)

Defendant's claim fails because his sentences did not result in double jeopardy or double counting.  The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V. "[T]he Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense."  *United States v. Halper*, 490 U.S. 435, 440 (1989).  Impermissible double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment to account for a type of harm that has already been fully accounted for by the application of another part of the Guidelines.  *See United States v. Romero*, 293 F.3d 1120, 1123 (9th Cir. 2002).

Effective November 1, 2000, the Sentencing Commission adopted Amendment 599, which retroactively modified the Guidelines applicable to § 924(c) offenses.  *See* U.S.S.G. § 2K2.4, cmt. n.2 (2000); U.S.S.G. § 1B1.10(a) & (c); *United States v. Hicks*, 472 F.3d 1167, 1169 (9th Cir. 2007), *abrogated on other grounds by Dillon v. United States*, 560 U.S. 817 (2010), (stating that the Amendment 599 was adopted pursuant to 28 U.S.C. § 994(o), as required by 18 U.S.C. § 3582(c)(2)).  Amendment 599 was enacted "to clarify under what circumstances defendants sentenced for violations of 18 U.S.C. § 924(c) in conjunction with convictions for other offenses may receive weapon enhancements contained in the guidelines for those other offenses."  U.S.S.G. § 2K2.4, cmt. n.2 (2000).

---

any crime of violence," that person shall "be sentenced to a term of imprisonment of not less than 10 years."

Amendment 599 amended the commentary to U.S.S.G. § 2K2.4, which provides the base offense level for individuals who have violated 18 U.S.C. § 844(h), 924(c), or 929(a).  *See United States v. Aquino*, 242 F.3d 859, 864 (9th Cir. 2001) (applying Amendment 599 to a conviction pursuant to § 924(c)).   The commentary to U.S.S.G. § 2K2.4, as amended by Amendment 599, instructs that when a consecutive § 924(c) sentence "is imposed in conjunction with a sentence for an underlying offense, [the sentencing court should] not apply any specific offense characteristic for possession, brandishing, use or discharge of an explosive or firearm when determining the sentence for the underlying offense."  U.S.S.G. § 2K2.4, cmt. n.4 (2002).  The commentary further explains that a sentence under § 924(c), U.S.S.G. § 2K2.4, "accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)."  *Id.*

Defendant's sentences comply with Amendment 599 because the Court did not apply an enhancement for brandishing or using a firearm to Count 5 (which was dismissed pursuant to the plea agreement), the offense underlying the § 924(c) conviction.  The Court did apply enhancements for brandishing or using a firearm to Counts 1, 3, 7, 9, 11, and Count 1 of the Nevada case, but those counts related to different bank robberies that were not related to the conduct underlying the § 924(c) conviction.[7] (CR Doc. 23 at 1-5; Doc. 75 at 1, 7-10.)  Accordingly, no double counting or double

---

[7]  In his Reply, Defendant argues that there is no underlying "crime of violence" to support his § 924(c) conviction because Count 5 of the second superseding indictment was dismissed pursuant to the plea agreement.  (Doc. 9 at 5.)  Count 5 of the second superseding indictment, which charged Defendant with armed robbery October 26, 2010, and was related to the § 924(c) charge, was dismissed pursuant to the plea agreement. (Doc. 23 at 3, Counts 5 and 6.)  In that agreement, Defendant admitted to facts of the armed robbery on that date and admitted that he had carried and discharged a handgun during the commission of that crime.  (Doc. 75 at 8.)  Thus, the government proved that Defendant committed the underlying crime of violence.   Accordingly, Defendant's assertion in his Reply that there is no underlying "crime of violence" to support his § 924(c) conviction lacks merit.  (Doc. 9 at 5.)  *See United States v. Robertson*, 901 F.2d 733, 734 (9th Cir. 1990) (Because § 924(c)(1) defines a crime separate from the underlying offense, it is unnecessary for a criminal defendant charged with a § 924(c) offense to be separately charged with and convicted of the underlying offense).

- 6 -

1   punishment occurred and Defendant's claims asserted in Ground One fail.  *See United*

2   *States v. Alcala*, 352 F.3d 1153, 1156 (7th Cir. 2003) (stating that "'other offenses' that

3   do not qualify as 'underlying offenses' may provide the basis of weapon enhancements.")

4   (citing *United States v. Howard*, 352 F.3d 332, 338 (7th Cir. 2003)).

5            **B.**        **Ground Two — Ineffective Assistance of Counsel**

6         In Ground Two, Defendant argues that trial counsel was ineffective for failing to

7   object to the "erroneous" guideline range, and for failing to give Defendant his own copy

8   of the PSR.  (Doc. 1 at 9-10.)  As set forth below, the Court recommends that these

9   claims be denied because Defendant has not established that trial counsel's performance

10   was deficient.

11            **1.**        **Standard to Establish Ineffective Assistance of Counsel**

12         To obtain relief for a claim of ineffective assistance of counsel, a defendant must

13   show both that counsel's representation fell below an objective standard of

14   reasonableness, and that counsel's deficient performance prejudiced the defense.

15   *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984).  To be deficient, counsel's

16   performance must fall "outside the wide range of professionally competent assistance."

17   *Strickland*, 466 U.S. at 690.  In reviewing counsel's performance, courts "indulge in a

18   strong presumption that counsel's conduct falls within the wide range of reasonable

19   professional assistance."  *Id.*  "A fair assessment of attorney performance requires that

20   every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

21   circumstances of counsel's challenged conduct, and to evaluate the conduct from

22   counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.  The standard for judging

23   counsel's representation is a most deferential one.  It is "all too tempting" to "second

24   guess counsel's assistance after conviction or adverse sentence."  *Strickland*, 466 U.S. at

25   689.  "The question is whether an attorney's representation amounted to incompetence

26   under "prevailing professional norms, not whether it deviated from best practices or most

27   common custom.  *Harrington v. Richter*, ___ U.S.___, 131 S. Ct. 770, 788 (2011)

28   (quoting *Strickland*, 466 U.S. at 690).

To establish prejudice, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*  Courts should not presume prejudice. *Jackson v. Calderon*, 211 F.3d 1148, 1155 (9th Cir. 2000).  Rather, a petitioner must affirmatively prove actual prejudice, and the possibility that a petitioner suffered prejudice is insufficient to establish *Strickland's* prejudice prong.  *See Cooper v. Calderon*, 255 F.3d 1104, 1109 (9th Cir. 2001) ("[A petitioner] must 'affirmatively prove prejudice.' . . . This requires showing more than the possibility that he was prejudiced by counsel's errors; he must demonstrate that the errors *actually* prejudiced him.") (quoting *Strickland*, 466 U.S. at 693) (emphasis in original).  However, the court need not reach both components of *Strickland* "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."); *see Jackson*, 211 F.3d at 1155 n.3 (the court may proceed directly to the prejudice prong).

### 2.    Counsel's Failure to Object to Offense Level Calculation

Defendant asserts that trial counsel was ineffective for failing to object to the erroneous offense level.  (Doc. 1 at 9.)  As addressed above, Defendant's offense level and resulting sentencing range were accurately calculated.  Accordingly, trial counsel was not ineffective for failing to object to the offense level.  *See Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) (stating that defense counsel's failure to raise a meritless objection does not constitute ineffective assistance of counsel under the Sixth Amendment); *Nardi v. Schriro*, 2008 WL 4446963, at *41 (D. Ariz. Sept. 30, 2008) (stating that "because the underlying challenge to the jury instructions lacks merit, the

corresponding ineffective assistance of counsel claim has no merit for lack of showing prejudice to Petitioner's defense.").

In *Baumann*, the defendant was charged with four counts of mail fraud and aiding and abetting.  He alleged that counsel was ineffective for failing to "move for a dismissal of arguably duplicitous counts."  *Baumann*, 692 F.2d at 571.  The Ninth Circuit stated that when an ineffective assistance of counsel claim rests upon specific acts and omissions by the attorney, relief will be granted only if the defendant was prejudiced by the those acts or omissions.  *Id.* at 572 (internal citation and quotation marks omitted).  The court concluded that the defendant was not prejudiced by counsel's failure to move for the dismissal of the counts because, as a matter of law, the counts were not defective and counsel's failure to raise a meritless legal argument is not ineffective assistance.  *Id.*

Here, Defendant asserts that trial counsel should have objected to the Court's application of sentencing enhancements as impermissible double-counting.  However, as discussed above, no double counting occurred.   As the court found in *Baumann*, Defendant could not have been prejudiced by trial counsel's failure to object because the enhancements for brandishing or using a firearm were not improper.  Accordingly, his claim of ineffective assistance of counsel fails.   Additionally, before sentencing Defendant the Court ensured that he agreed with the sentencing calculations in the PSR and that he was satisfied with trial counsel's representation.  (Doc. 78 at 4-5.)

### 3.    Trial Counsel's Failure to Give Defendant a Copy of the PSR

In Ground Two, Defendant also contends that trial counsel's failure to provide him with a copy of the PSR constituted ineffective assistance of counsel.[8]  (Doc. 1 at 10.)  To support this claim, Defendant refers to an April 30, 2012 letter from trial counsel indicating that trial counsel had requested from the probation officer that Defendant be provided with his own copy of the PSR and had been advised that "both the Local Rules

---

[8]   Although Defendant apparently did not have his own copy of the PSR before sentencing, in his § 2255 motion, Defendant states that he "actually reviewed [the PSR] physically" in May of 2013.  (Doc. 1 at 17.)

1    and the policies of the Bureau of Prisons do not allow these reports to be provided."

2    (Doc. 1 at 21.)  Counsel also noted that the probation officer had "reiterated concerns

3    with privacy and safety." (*Id*.)  Trial counsel added, "I do not know how the Court would

4    rule on [a motion to allow Defendant to obtain a copy of the PSR] but think it over and

5    let me know what you would like to do." (*Id.*)

6          In his Reply, Defendant argues that Local Rule of Criminal Procedure 32.1(d)(2)

7    permits a defense attorney to provide a defendant with a copy of the PSR and, therefore,

8    counsel was ineffective because he was either ignorant of that Rule or misled Defendant.

9    (Doc. 9 at 11.)  Defendant is correct that Local Rule 32.1(d)(2) provides that "defendant's

10   attorney *may* provide a copy of [the PSR] to the defendant."   LRCrim 32.2(d)(2)

11   (emphasis added).  Based on the record before the Court, it appears that trial counsel was

12   aware of this Rule, but based on the probation officer's security concerns and his

13   statement that the Bureau of Prisons' policies would not permit Defendant to have a copy

14   of the PSR, he requested that the probation officer provide a copy of the PSR to

15   Defendant.  Thus, it appears that trial counsel was not certain whether Defendant could

16   possess his own copy of the PSR because he was incarcerated.  (*See* Doc. 1 at 21.)[9]

17         The record does not indicate that counsel intentionally misled Defendant about

18   whether he could possess his own copy of the PSR.   Rather, trial counsel made

19   reasonable efforts to obtain a copy of the PSR from the probation officer to give to

20   Defendant, but was unable to do so, and offered to seek a court order to allow Defendant

21   to have a copy of the PSR.

22         In addition, LRCrim. 32.1(d)(2) provides that "defendant's attorney *may* provide a

23   copy of [the PSR] to the defendant," but does not require an attorney to do so.  Finally,

24   although trial counsel did not give Defendant his own copy of the PSR, Defendant

25   acknowledges that trial counsel read the PSR to him in its entirety during a video-

26

27         [9]  In his Reply, Defendant argues that he was in the custody of the U.S. Marshal
     not the BOP, and was being held at a "private contracted detention facility" in solitary
28   confinement.  (Doc. 9 at 11-12.)  The resolution of Defendant's claim of ineffective
     assistance does not depend on the specifics of his detention.

telephone conference.  (Doc. 1 at 17.)  During sentencing, Defendant stated that counsel read the PSR to him and discussed it with him.  (CR Doc. 78 at 4.)  Based on the record before the Court, Defendant has not shown that trial counsel's performance was deficient for failing to give Defendant his own copy of the PSR.  Accordingly, the Court does not reach the prejudice prong.  *See Strickland*, 466 U.S. at 697.

**C.   Ground Three — Probation Officer's Alleged Violation of Due Process**

In Ground Three, Defendant contends that he should be resentenced because the probation officer's failure to give him a copy of the PSR before sentencing violated U.S.S.G. § 6A1.2 and the Due Process Clause.  (Doc. 1 at 17.)  *See* U.S.S.G. § 6A1.2(a) ("The probation officer must give the presentence report to *the defendant*, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period.") (emphasis added); *see also* Fed. R. Crim. P. 32(e)(2) ("The probation officer must give the presentence report to the defendant . . . at least 35 days before sentencing unless the defendant waives this minimum period.").

**1.   The Due Process Clause and the PSR**

A criminal defendant has a due process interest in the sentencing stage of his prosecution.  *See United States v. Malcolm*, 432 F.2d 809, 815 (2d Cir. 1970).  This due process right is violated when a defendant is sentenced on the basis of "materially untrue" statements.  *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  Accordingly, Congress has required, pursuant to Fed. R. Crim. P. 32, "at sentencing, the court must . . . verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report."  Fed. R. Crim. P.  32(i)(1)(A).

The district court need not specifically inquire about a defendant's knowledge of the presentence report.  *United States v. Lewis*, 880 F.2d 243, 245 (9th Cir. 1989).  Rather, the court may "reasonably rely on evidence indicating that a defendant has read the presentence report and discussed it with counsel."  *Id.* at 246.  Here, the Court asked Defendant whether he had read the PSR.  (CR Doc. 78 at 4.)  Defendant responded that he had not read the report, but stated that counsel had read the report to him and that they

had discussed it.  (*Id.*)[10]  The government argues that because counsel read the PSR to Defendant and discussed it with him, Rule 32 and the Due Process Clause were satisfied. (Doc. 6 at 8-10 (citing *Inzone v. United States*, 707 F. Supp. 107, 108. (E.D.N.Y. 1989).)

In *Inzone*, the defendant claimed that his due process rights were violated because he was "denied an opportunity to read his presentence investigation report (PSI) prior to sentencing." *Inzone,* 707 F. Supp at 108.  In rejecting the defendant's claim, the court noted that defense counsel had an opportunity to "see" the report, and that defendant admitted in an affidavit that he and his counsel had "discussed allegations made in the PSI report." *Id.*  Therefore, the court concluded that because "petitioner had a discussion about the PSI before sentence was imposed, he perforce had the opportunity to review it." *Id.*  Under *Inzone*, Defendant's due process claim fails because his attorney read the PSR to him and discussed it with him, which provided him an opportunity to allege inaccuracies in the PSR.  However, even if a Rule 32 error occurred, as discussed in Section III(C)(2) below, any error was harmless and Defendant is not entitled to relief on this claim.[11]  *See United States v. Soltero*, 519 F.3d 858, (9th Cir. 2007) (stating that harmless error analysis applies to Rule 32 errors).

---

[10]  The following exchange occurred at sentencing:

> THE COURT:  Mr. Martinez, did you read the report and recommendations?
>
> PEDRO ISAAC MARTINEZ: No. It was read to me.
>
> THE COURT: It was read to you?
>
> PEDRO ISAAC MARTINEZ: Yes.
>
> THE COURT: And after it was read to you, did you and your lawyer have a chance to discuss its contents?
>
> PEDRO ISAAC MARTINEZ: Yes, we did.

(CR Doc. 78 at 4.)

[11]  Defendant also asserts a due process violation based an alleged "failure to provide Defendant with evidence favorable to Defendant," which impeded his "ability to object to any PS[R] discrepencies [sic]."  (Doc. 1 at 10-11.)  However, the record does not support Defendant's claim.  When the Court asked Defendant if there were any errors in the PSR that he would like to bring to the Court's attention, Defendant raised one

1

2.      **Defendant was not Prejudiced by any Rule 32 Violation**

2          As set forth above, in Ground Three Defendant asserts that the probation officer

3   violated U.S.S.G. § 6A1.2 and Rule 32(e)(2) by failing to give him a copy of the PSR to

4   review.   To be entitled to relief on this Rule 32 claim,[12] Defendant must establish

5   prejudice.  *See United States v. Soltero*, 510 F.3d 858, 863-64 (9th Cir. 2007) (defendant

6   must show prejudice if defendant did not have copy of PSR and attorney failed to discuss

7   the PSR with defendant); *United States v. Sustaita*, 1 F.3d 950, 954 (9th Cir. 1993)

8   (same); *see also United States v. Davila-Escovedo*, 36 F.3d 840, 844 (9th Cir. 1994)

9   (violation of Rule 32 may be excused "if it is clear that no prejudice resulted").

10         Although Defendant did not receive his own copy of the PSR, in his § 2255

11  motion he admits that trial counsel read the PSR to him in its entirety during a video-

12  telephone conference.  (Doc. 1 at 17.)  Thus he had an opportunity to review the PSR.

13  Even assuming that the probation officer violated Rule 32 and U.S.S.G.§ 6A1.2 by failing

14  to give Defendant his own copy of the PSR, Defendant is not entitled to relief because he

15  has not shown prejudice.  *See Davila-Escovedo*, 36 F.3d at 844 (stating that a violation of

16  Rule 32 may be excused "if it is clear that no prejudice resulted").

17         In an effort to demonstrate prejudice, Defendant argues that the weapons

18  enhancements applied to Counts 1, 3, 7, 9, and 11, and Count 1 in the Nevada case, were

19  improper.   (Doc. 1 at 16.)   As discussed in Section II(A), those enhancements were

20  properly applied.  Aside from his claim that the enhancements were erroneous, which the

21  Court has rejected, Defendant does not point to any specific factual or legal inaccuracies

22  contained in the PSR that could have affected his sentence.  (Doc. 1 at 15-17; Doc. 9 at

23

24  _____

    unrelated arrest that was corrected in the final draft of the PSR.  (Doc. 78 at 4-5.)  This
25  supports a conclusion that he reviewed the PSR but failed to raise any of the issues he
    asserts in the pending § 2255 motion. Further, other than the PSR itself, Defendant does
26  not identify the "favorable evidence" that was allegedly not disclosed to him.  Thus, he is
    not entitled to relief on this claim.

27      [12]   U.S.S.G. § 6A1.2 and Rule 32 both require the probation officer to give the
    defendant a copy of the PSR.  Because the case law typically refers to violations of these
28  provisions as Rule 32 errors, the Court refers to Defendant's claim based on the probation
    officer's failure to give him a copy of the PSR as a Rule 32 error.

11-12); s*ee United States v. Dabdoub-Canez*, 53 F.3d 340 (9th Cir. 1995) (to show prejudice resulting for a Rule 32(a)(1)(A) violation, a defendant must "point to specific factual inaccuracies in his PSR that could affect his sentence").  Because Defendant has not shown any specific prejudice that he suffered as a result of the probation officer's alleged violation of U.S.S.G. 6A1.2 and Rule 32(e)(2), any such violation was harmless error and his claims based on his failure to receive a copy of the PSR should be denied. *See United States v. Bennett*, 519 Fed. App'x 419, 419-20 (9th Cir. 2013) (finding that although the district court proceeded to sentencing even though the defendant had not reviewed the PSR, any error was harmless because the defendant did not identify that his failure to review the report was prejudicial to his sentencing); *Davila-Escovedo*, 36 F.3d at 844 (Rule 32 error warrants resentencing only if the defendant was prejudiced.)

### D.    Ground Four — Waiver of Right to bring Collateral Attack

In Ground Four, Defendant argues that the waiver of his right to collaterally attack his sentences under the plea agreement is moot because "fundamental errors" occurred at sentencing.  (Doc. 1 at 5.)  In support of this claim, Defendant reiterates the claims he raises in Grounds One through Three and argues that those claims amount to fundamental error.  In his Reply, however, Defendant states that "if ground 1 is meritless, ground 4 is moot."  (Doc. 9 at 13.)

Plea agreements are contractual in nature and their plain language will generally be enforced if the agreement is clear and unambiguous on its face.  *See United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc).  The right to collaterally challenge a conviction or sentence is statutory, and a knowing and voluntary waiver of a statutory right is enforceable.  *United States v. Abarca*, 985 F.2d 1012, 1013-14 (9th Cir. 1993).  To be enforceable as a bar to a collateral attack, a plea agreement must expressly waive the right to bring a § 2255 motion.[13]  *United States v. Nunez*, 223

---

[13]  The Court may determine whether a waiver is knowing and voluntary based on a review of the written plea agreement and the record of the change of plea proceeding, without holding a hearing.  *See Jeronimo*, 398 F.3d at 1153-55 (finding waiver of direct appeal knowing and voluntary based on plea agreement and change of plea proceeding).

F.3d 956, 958-59 (9th Cir. 2000); *Abarca*, 985 F.2d at 1013–14 (stating that movant's waiver executed in his plea agreement foreclosed him from challenging his sentence in a § 2255 motion); *cf. United States v. Pruitt*, 32 F.3d 431, 432–33 (9th Cir. 1994) (finding that language in a plea agreement that the defendant "will not appeal whatever sentence is imposed by the court" did not constitute a waiver of the right to bring a § 2255 motion).

The only claims that a defendant cannot waive are claims that the plea or waiver itself was involuntary, and that ineffective assistance of counsel rendered the plea or waiver involuntary.  *See Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005) (holding that a plea agreement that waives the right to file a federal habeas petition pursuant to § 2254 is unenforceable with respect to an ineffective-assistance-of-counsel claim that challenges the voluntariness of the waiver).

However, "[c]ollateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside [the category of ineffective assistance of counsel claims challenging the validity of the plea or the waiver] are waivable."  *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001); *see also Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) (joining the Second, Fifth, Sixth, Seventh, and Tenth Circuits, the Eleventh Circuit held that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing.").

In addition, a defendant's right to challenge any sentencing errors may be explicitly waived.  *See United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991) (declining to consider defendant's claim that the district court had misapplied the sentencing guidelines because defendant had waived his right to appeal in his plea agreement and he was sentenced in accordance with the terms of that agreement).  When a waiver specifically includes the waiver of the right to appeal a sentence, then it also

waives "the right to argue ineffective assistance of counsel at sentencing." *United States v. Nunez*, 223 F.3d 956, 959 (9th Cir. 2000); *see United States v. Fernandez-Mendoza*, 2013 WL 4431029, at *7-8 (D. Ariz. Aug. 16, 2013) (finding that movant's knowing and intelligent waiver of his right to seek review in a § 2255 motion precluded him from challenging his sentence in a § 2255 motion).

The written plea agreement in this case included a waiver of Defendant's right to seek direct appeal or collateral review of his convictions and sentences.[14]   (CR Doc. 75 at 4.)  Specifically, the plea agreement contained the following provision:

> Providing the defendant's sentence is consistent with this agreement, the defendant waives (1) any and all motions, defenses, probable cause determinations, and objections which the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, or order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 and motions under 28 U.S.C. § 2241 and 2255.  The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack, or other motion the defendant might file challenging his conviction, order of restitution or forfeiture, or sentence in this case.

(CR Doc. 75 at 4.)

In the plea agreement, the parties stipulated that Defendant would be sentenced to "no less than 20 years (240) months incarceration, and no more than 25 years (300) months) incarceration."   (CR Doc. 75 at 2.)   The agreement further provided that Defendant agreed to make restitution in an amount to be determined by the Court, but no more than $50,000.  (*Id.* at 3.)   Finally, the agreement provided that the government would recommend up to a three-level reduction in the Guidelines offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b).  (*Id.*)  In accordance with

---

[14]   The record before the Court, including the docket in CR-11-248-SRB does not contain a transcript of the December 27, 2011 change of plea hearing.

1    the plea agreement, the Court sentenced Defendant to a total of 300 months'

2    incarceration, and ordered him to pay $16,149.00 in restitution.  (CR Doc. 74 at 1-2.)

3    The Court also accepted the recommended three-level adjustment for acceptance of

4    responsibility.  (PSR ¶ 70; CR Doc. 78 at 3-4.)

5            In his § 2255 motion, Defendant does not argue that plea or the appeal waiver

6    were involuntary, or that ineffective assistance of counsel rendered the plea or waiver

7    involuntary.  (Docs. 1 at 18, 9); *see Lampert*, 422 F.3d at 871 (holding that a plea

8    agreement that waives the right to file a federal habeas petition pursuant to § 2254 is

9    unenforceable with respect to an ineffective-assistance-of-counsel claim that challenges

10   the voluntariness of the waiver).  Rather, Defendant argues that the claims in his § 2255

11   motion are not waivable because they assert "fundamental error."  (Doc. 1 at 17-18.)

12   Defendant does not define or explain "fundamental error."

13           Even assuming that a "fundamental error" would invalidate the appeal waiver in a

14   plea agreement, Defendant has failed to establish that any fundamental error occurred.

15   *See United States v. Malone,* 503 Fed. App'x 499 (9th Cir. 2012) ("even assuming that

16   plea agreement waivers can be excused to avoid 'manifest injustice.' [defendant] has

17   failed to make such a showing in this case.")  As discussed in Sections III(A)-(C) his

18   claims lack merit and, therefore, Defendant cannot establish "fundamental error"

19   occurred based on these failed claims.

20           Because Defendant's sentences were consistent with the plea agreement, he

21   effectively waived his right to collaterally attack his sentences, and thus to assert

22   ineffective assistance of counsel at sentencing.  *See Fernandez-Mendoza*, 2013 WL

23   4431029, at *7-8; *Gomez-Cazares*, 2013 WL 394208, at *3.  Accordingly, he has waived

24   his right to bring the claims asserted in his §2255 motion.  Accordingly, Defendant is not

25   entitled to § 2255 relief.

26           Accordingly,

27

28

1   **IT IS RECOMMENDED** that Defendant's Motion to Vacate, Set Aside, or

2   Correct Sentence by a person in Federal Custody pursuant to 28 U.S.C. § 2255 (Doc. 1)

3   be **DENIED**.

4   **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and

5   leave to proceed in forma pauperis on appeal be **DENIED** because Defendant has not

6   made a substantial showing of the denial of a constitutional right.

7   This recommendation is not an order that is immediately appealable to the Ninth

8   Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should

9   not be filed until entry of the District Court's judgment.  The parties shall have fourteen

10   days from the date of service of a copy of this recommendation within which to file

11   specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6,

12   72.  Thereafter, the parties have fourteen days within which to file a response to the

13   objections.   Failure to file timely objections to the Magistrate Judge's Report and

14   Recommendation may result in the acceptance of the Report and Recommendation by the

15   District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114,

16   1121 (9th Cir. 2003).  Failure to file timely objections to any factual determinations of

17   the Magistrate Judge may be considered a waiver of a party's right to appellate review of

18   the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's

19   recommendation.  *See* Fed. R. Civ. P. 72.

20   Dated this 1st day of July, 2014.

23   _____

24   Bridget S. Bade
    United States Magistrate Judge

- 18 -